664 So.2d 341 (1995)
Pauline MALISKI, Appellant,
v.
John MALISKI, Appellee.
No. 95-495.
District Court of Appeal of Florida, Fifth District.
December 15, 1995.
*342 Judy Taylor Rush, of John W. Tanner, P.A., Daytona Beach, for Appellant.
D. Patrick Dalton, of Withlacoochee Area Legal Services, Inc., Ocala, for Appellee.
HARRIS, Judge.
After a thirty-four-year marriage, Pauline and John Maliski divorced. Although both parties remarried, Pauline's second marriage was annulled and she moved in with her 85-year-old mother. John remained married to his second wife throughout this proceeding.
Even though John remained married to another woman, he decided to live with Pauline. John purchased a mobile home for $35,000 from his assets but placed title to the property solely in Pauline's name. John explained to the realtor that he was placing the property in Pauline's name because he wanted to protect the property from any claims by his legal wife.
The parties shared the home until 1993 when John was hospitalized. While in the hospital, John received a letter from Pauline's lawyer advising him that he was no longer welcome in the home and that, if he returned there, he would be charged with trespassing.
John sued Pauline, claiming that she only held the home for him under the doctrine of resulting trust. Pauline claimed that the property was a gift to her from John. The trial court found a resulting trust; we affirm.
In Towerhouse Condominium, Inc. v. Millman, 475 So.2d 674, 677 (Fla. 1985), the court explained how a resulting trust arises:
As a matter law, where property is acquired in the name of one person or entity *343 with consideration provided by others, the transferee is presumed to hold title on a resulting trust for those who provided the consideration.
Although Marks v. Millman, 641 So.2d 414, 415-16 (Fla. 3d DCA 1993), rev. denied, 651 So.2d 1195 (Fla. 1995), quoting Wadlington v. Edwards, 92 So.2d 629 (Fla. 1957), holds: "In the creation of a resulting trust it is essential that the parties actually intend to create the trust relationship but fail to execute documents or establish adequate evidence of the intent," the court in Abreu v. Amaro, 534 So.2d 771 (Fla. 3d DCA 1988), explained that such intent is presumed when the critical fact of payment of the purchase price is established.
Under Florida Law, once a plaintiff proves that he paid the purchase price for a piece of property, a presumption arises that it was the parties' intention that the individual holding legal title was to hold the property in trust for the payor. On such facts, a resulting trust is presumed as a matter of law. The burden then shifts to the transferee to show that the money was a gift or loan.
Abreu at 772 (citing Pyle v. Pyle, 53 So.2d 312 (Fla. 1951)).
If the transferee can show that the payor is under a legal or moral obligation to provide for the transferee, [Frank v. Eeles, 152 Fla. 869, 13 So.2d 216, 218 (1943)], that the transferee is "the natural object of the payor's bounty" [Abreu, 534 So.2d at 772], or that the payor stands in a position of in loco parentis to the transferee, Id., then a rebuttable presumption of gift is raised and the burden again shifts.
In the instant case, Pauline relies heavily on the fact that John failed to establish that both parties intended that she hold the property solely for John's benefit. However, as the Abreu court explained, that intent was presumed once John proved that he paid for the property. It then became Pauline's burden to rebut the resulting trust presumption by establishing that John gave the property to her as a gift. In order to accomplish this goal, Pauline introduced substantial testimony that John had repeatedly referred to the property as being a gift to her. However, it is quite clear from the trial court's holding that the court did not find this testimony credible and instead accepted John's assertions that he had never intended the property as a gift. This holding is supported not only by John's testimony but also by the realtor's statements that John wanted the property titled in Pauline's name to avoid claims by his current wife. The credibility of the witnesses is within the trial court's exclusive purview, and there was sufficient evidence presented to support the conclusion that John did not intend to give Pauline any interest in the title to the home.
John admitted in his testimony that he purchased the home "as a sharing thing." But this reference is as consistent with an intent to provide Pauline with a place to live as it is with an intent to share title with her. John's testimony indicates that he intended only to provide Pauline with a place to live. Even though the facts are in dispute, the record supports the judgment of the trial court.
AFFIRMED.
GOSHORN and GRIFFIN, JJ., concur.